IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERROL BAGNER,

          Petitioner,         No. C 05-2631 WHA (PR)

  vs.                                  **DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

JAMES YATES, Warden,

          Respondent.
                                 /

     This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

**STATEMENT**

     An Alameda County jury convicted petitioner of one count of second-degree robbery of Humberto Garcia, an employee of Smart & Final, with personal use of a knife. *See* Cal. Penal Code §§ 211, 1192.7(c); 12022(b)(1). The jury acquitted him of additional counts of robbery and burglary with the personal use of a knife involving a different victim, Deen Dayal. He was found to have suffered ten prior convictions, many of which qualified as "strikes," *see* Cal. Penal Code §§ 1170.12(c)(2)(a); 667(e)(2)(A), including prior convictions for robbery, forcible sodomy, false imprisonment by violence, possession of a firearm by a felon, residential burglary, and assault with a deadly weapon. The court sentenced Bagner to a total prison term

of thirty-five years to life.

The following facts are taken from the opinion of the California Court of Appeal. The portions relating to the Dayal robbery, as to which petitioner was found not guilty, are omitted.

**Smart & Final Robbery**

On April 29, 2001, Lorena Martin, was working as a cashier at Smart & Final in Oakland, California. She was the only cashier on duty, when she observed an African-American male, walk past the registers with some laundry detergent and other loose items in the cart. It was Smart & Final's policy to bag every item that was purchased before it left the store. The man pushing the cart had not gone through her register, which was the only one open, yet he pushed the cart through the entrance-only door. Martin suspected the man was shoplifting, and immediately notified Humberto Garcia, the store manager, and assistant manager Frank Fiero. Both managers dashed out to the parking lot.

Garcia saw appellant in the parking lot, pushing a cart, running away and looking backwards. Appellant pushed the cart toward a Latino man. Garcia and Fiero grabbed the cart, and Garcia told appellant to come inside to pay for the items. Appellant replied that the items in the cart belonged to the Latino man, but the Latino man denied it. The cart contained Tide detergent, two boxes of candy, and a case of beer. None of these items were bagged. When Garcia and Fiero did not let go of the cart, appellant pulled out a knife, walked around the cart toward Garcia, and Fiero, saying "come here, mother fucker." Garcia relinquished the cart. Appellant reached in, grabbed the candy and beer, and ran away, dropping the case of beer as he ran.

When the police arrived they went to a nearby shelter, and found on a bed to which appellant was assigned, boxes of candy and a knife which Garcia identified as the ones he had seen in appellant's possession. The police took photographs of the merchandise, and returned it to the store. A person identifying himself as Errol Bagner called Smart & Final, and talked to a police officer who was present. The caller said he did take the items, but that it was all a mistake, and stated that he took the knife out of the basket, not out of his pocket. Appellant did not return to the shelter.

The cashier, Martin, was later unable to identify appellant in a pretrial physical lineup, but Garcia did identify appellant.

**Defense Evidence**

Appellant testified that on April 29, 2001, he checked himself out of the St. Patrick's Abbey transitional home, and went to the liquor store where he purchased a pack of cigarettes and two beers. He was walking by the Smart & Final parking lot when he saw a truck belonging to his friend Rob, parked in the lot. He went to ask where Rob was, and was told Rob was in Smart & Final, but would be right back. Appellant decided to wait. Soon, Rob arrived pushing a shopping cart containing beer, toilet paper, cleaning supplies, detergent and Reese's candy.

After some small talk, appellant asked if he could buy some of the candy. After some bartering they agreed upon a price, which appellant paid. A few minutes later Garcia, and another person came up, "cursing and ranting and raving." Garcia grabbed the cart and said: "You thieving motherfucker, give it back." Appellant froze for a second because he had no idea what Garcia was

2

talking about, but then appellant grabbed the cart too. He told Garcia that not everything in the cart was his, but that he intended to take out what was his, and then he would let Garcia have the cart. A tug of war ensued, and eventually appellant took out a knife, and told Garcia, "let it go, motherfucker." Garcia backed off and told appellant he was going to call the police. Appellant reached into the cart to grab the candy, and left, telling Garcia he could call whoever he wanted. Appellant returned to St. Patrick's Abbey, and placed the candy in his bunk. He did not think about the fact that Rob stood by saying nothing, until later when he learned the police had been to the Abbey looking for him. He called Smart & Final, and tried to explain what happened to Garcia and the police officer to whom Garcia passed the phone, but the officer told him to come to Smart & Final and be arrested. He was not allowed to return to St. Patrick's Abbey, because of the incident.

**Rebuttal**
Humberto Garcia testified that he had seen appellant in the store a week before the April 29, 2001 incident. A customer reported he had seen someone leaving the store without paying. Garcia went out to the parking lot to investigate and saw appellant with a cart containing unbagged items of laundry detergent, beer, and candy. Appellant was unable to produce a receipt, but became angry when Garcia told him to return to the store and pay. Garcia initially gave up and let him leave but, when a customer offered to help, they pursued appellant in a car and Garcia confronted him again a few blocks later. Appellant came towards Garcia in a menacing way, grabbed some items from the cart and then ran away. (Exh. 5 at 1-4.)

## DISCUSSION

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case

3

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner contends that (1) his due process rights were violated by the state's failure to preserve and produce tapes from the store's security cameras; (2) there was insufficient evidence that the merchandise was stolen; (3) refusal to give an instruction proposed by petitioner lightened the prosecution's burden to prove each element

4

of the crime beyond a reasonable doubt. The second and third of these issues are both contained in "Claim Two" of the petition, but are treated separately here for the sake of clarity.

Petitioner voluntarily dismissed another issue when it was determined to be unexhausted.

**1.     Preservation of Tapes**

Smart and Final's surveillance tape made at the time petitioner left the store was not preserved. The factual background was set out by the court of appeal:

> Appellant next contends that, as a sanction for the failure to preserve a Smart & Final videotape of a person pushing the cart with unbagged items out of the store, the court should either have dismissed count one or instructed the jury that it could draw an adverse inference from the failure of the prosecution to preserve this evidence.
>
> Before denying appellant's motion, the court held an evidentiary hearing. Garcia testified that he viewed the videotape about a half hour after his encounter with appellant. All that was visible on the videotape were hands and arms pushing a basket with some unbagged merchandise out of the store. A police officer who was present told Garcia the tape was worthless. Officer Milina testified that he asked Garcia for a copy of the videotape, but Garcia told him it was store policy to make a copy first. Milina asked Garcia to contact the police so they could pick up a copy after it was duplicated. The tape, however, was never copied and was reused in the normal course of business.

(Exh. 5 at 16-18.)

The court of appeal rejected petitioner's claim with this reasoning:

> The court did not err in denying the motion to dismiss and appellant's request for sanctions for several reasons: First, the court determined that the tape was not material or exculpatory. That finding is amply supported by Garcia's testimony that it showed nothing more than the hands and arms of a person pushing the cart out of the store. (See *United States v. Bagley* (1985) 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 [missing evidence is material only if there is a reasonable probability that, had it been disclosed, the result would have been different]; *People v. Roybal* (1998) 19 Cal.4th 481, 510, 79 Cal.Rptr.2d 487, 966 P.2d 521 [court's finding on issue whether evidence would have been exculpatory must be upheld if supported by substantial evidence].) Second, the court concluded, based upon the record before it, that there was no evidence of bad faith on the part of the police who failed to secure a copy from Garcia, and preserve it. (See *Arizona v. Youngblood* (1988) 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281; *People v. Farnam* (2002) 28 Cal.4th 107, 166, 121 Cal.Rptr.2d 106, 47 P.3d 988.) At worst, the evidence might support an inference that Milina was negligent in failing to follow up on his request for a copy, or in failing to admonish Garcia to preserve the tape. Negligent failure to preserve evidence does not violate due process. (*People v. Ochoa* (1998) 19 Cal.4th 353, 417, 79 Cal.Rptr.2d 408, 966 P.2d 442.)
>
> Third, the tape was not destroyed by the police, but inadvertently taped

5

> over by a private party. The police did not have a duty to seize the videotape from Garcia, and took reasonably measures to secure it by asking that Garcia notify them when a copy was made. (See *In re Michael L.* (1985) 39 Cal.3d 81, 84, 86-87, 216 Cal.Rptr. 140, 702 P.2d 222[neither dismissal nor other sanction was warranted when police left store surveillance videotape in possession of store owner, and owner inadvertently erased it.) Appellant's attempt to distinguish *In re Michael L., supra,* on the grounds that, in that case, the police admonished the private party not to erase the tape, and did at least obtain, and preserve stills from the tape, fails because again these alleged omissions, at most, suggest that the police were negligent, (*People v. Ochoa, supra,* 19 Cal.4th at p. 417, 79 Cal.Rptr.2d 408, 966 P.2d 442) and in any event the tape was not exculpatory.

(*Ibid.*)

The government has a duty to preserve material evidence, i.e., evidence whose exculpatory value was apparent before it was destroyed and that is of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997). Here, however, the videotape was not exculpatory, so there was not a *Trombetta* violation.

Although the good or bad faith of the police is irrelevant to the analysis when the police destroy material exculpatory evidence, the analysis is different if the evidence is only *potentially* useful: there is no due process violation unless there is bad faith conduct by the police in failing to preserve evidence. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Villafuerte v. Stewart*, 111 F.3d 616, 625 (9th Cir. 1997). Negligent failure to preserve potentially useful evidence is not enough to establish bad faith and does not constitute a violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997). The existence of a pending discovery request does not eliminate the necessity of showing bad faith on the part of police who destroy potentially useful evidence, *Illinois v. Fisher*, 540 U.S. at 547-48, nor does the fact that the potentially useful evidence is central to the prosecution's case or the defendant's defense eliminate the necessity of showing bad faith on the part of police who destroy it, *id.* at 549. Here, the evidence was not even potentially useful, and there was no showing of bad faith.

Finally, the government's duty to preserve material evidence is limited to evidence it has gathered, and here the government did not "gather" the videotape. *See Trombetta*, 467 U.S. at

1 488-90.  But although the government does not generally have a duty to collect exculpatory
2 evidence, a bad faith failure to do so may violate due process.  *Miller v. Vasquez*, 868 F.2d
3 1116, 1119-20 (9th Cir. 1989).  It is questionable whether there is clearly-established Supreme
4 Court authority on this point, but in any case petitioner has not established that the failure to
5 collect the videotape was in bad faith – indeed the police tried to collect it, and asked the store
6 to contact them when it was available, but were never contacted.  To whatever extent a bad-
7 faith failure to collect evidence might violate due process, that claim has not been made out
8 here.

9 The was no constitutional violation in connection with the videotape evidence, so the
10 state courts' rejection of this claim was not contrary to, or an unreasonable application of,
11 clearly-established United States Supreme Court authority.

12 **2.    SUFFICIENCY OF THE EVIDENCE**

13 Petitioner contends that there was insufficient evidence to support his conviction.

14 The Due Process Clause "protects the accused against conviction except upon proof
15 beyond a reasonable doubt of every fact necessary to constitute the crime with which he is
16 charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the
17 evidence in support of his state conviction cannot be fairly characterized as sufficient to have
18 led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a
19 constitutional claim.  *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).  A federal court reviewing
20 collaterally a state court conviction does not determine whether it is satisfied that the evidence
21 established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992),
22 *cert. denied*, 510 U.S. 843 (1993).  The federal court "determines only whether, 'after viewing
23 the evidence in the light most favorable to the prosecution, any rational trier of fact could have
24 found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*,
25 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a
26 reasonable doubt, may the writ be granted.  *Jackson*, 443 U.S. at 324.

27 Petitioner contends that there was insufficient evidence that he stole the recovered items.
28 The court of appeal dealt with this claim as follows:

7

Appellant next contends that his robbery conviction must be reversed because there is no substantial evidence that the items in the basket had been taken from Smart & Final without being paid for, or that appellant was the person who took them.

He asserts that because neither Garcia, nor Martin, could rule out the possibility that the person seen pushing the cart from the store had purchased the items from another cashier, possibly before Martin assumed her duties at the register, and because the items recovered from the cart, and appellant's bunk, were never scanned through Smart & Final's bar code inventory system to determine whether they had been purchased, there was no direct evidence that these items had, in fact, been removed from the store without being paid for. He concludes that there was no substantial evidence that the merchandise had been taken from Smart & Final when its employee, Garcia, intervened to prevent appellant from escaping with the goods. (See People v. Estes (1983) 147 Cal.App.3d 23, 26, 194 Cal.Rptr. 909 [robbery occurs when perpetrator initially takes merchandise from store without force or fear, but then uses force or fear to resist intervention by store's security guard in attempt to prevent perpetrator from escaping with the merchandise].)

His analysis of the evidence, however, ignores reasonable inferences that could be drawn and relies upon a series of factual inferences in support of innocence, without demonstrating that there were no other reasonable and contrary inferences in support of guilt. As the reviewing court we must draw all reasonable inferences and resolve all conflicts in support of the judgment, and defer to any credibility determinations made by the trier of fact. (See, e.g., People v. Rodriguez (1999) 20 Cal.4th 1, 11, 82 Cal.Rptr.2d 413, 971 P.2d 618; People v. Johnson (1980) 26 Cal.3d 557, 576-577, 162 Cal.Rptr. 431, 606 P.2d 738.)   This same standard applies, of course, where, as here, the prosecution relies primarily upon circumstantial evidence. (People v. Rodriguez, supra, 20 Cal.4th at p. 11, 82 Cal.Rptr.2d 413, 971 P.2d 618.)  If there is substantial evidence to support the judgment, then it is simply immaterial that there was other conflicting evidence, or were contrary inferences that could have drawn.

Martin testified that she believed that she was the only cashier working at a register at the time she saw a man pushing a cart with unbagged items towards the entrance of the store.  Anyone checking out items at that time would have had to go through her.  The items in the cart, which included Tide detergent, were not bagged despite the store policy that all purchased items be bagged.  She therefore concluded that the man was removing the items from the store without paying for them, and called a manager to investigate.  Within seconds Garcia and another employee exited the store.  They saw appellant running away, looking back towards the store, with the items in the cart.  When Garcia asked appellant to come back inside and pay, instead of saying he had already paid or producing a receipt, appellant asserted that the items in the cart belonged to a Latino man standing nearby.  Yet, the Latino man immediately denied it. All of the foregoing constitutes strong circumstantial evidence supporting the inference that the items in the cart had not been purchased, but rather had been stolen from the store.

Appellant's reliance on Garcia's testimony that he never scanned the items to verify that they had not been purchased, and the failure to present inventory records or store receipts, is simply an example of evidence that might support a contrary inference.  The same is true of his argument that Martin could not be sure that he had not paid for the items earlier through another cashier, and asked not to have the items bagged.  Appellant was free to argue to the jury these

8

facts created a reasonable doubt, but for the purpose of our review the jury's verdict is supported by other contrary reasonable inferences from the foregoing circumstantial evidence.

In a similar vein, appellant asserts there was no substantial evidence that he was even in the store on April 29, or that he was the person pushing the cart out of the store, because Martin was unable to identify him in a lineup, and there were various discrepancies between Martin's description of the man she saw, and Garcia's description of appellant.  These are issues going to the weight of the evidence not its sufficiency.  The jury could, and clearly did infer that appellant was the person Martin had seen, from the evidence that, within seconds of Martin's report, Garcia, and Fiero exiting the store saw appellant running away, pushing a cart, and looking over his shoulder.  Garcia had no difficulty identifying appellant, especially in view of Garcia's prior contacts with him.  The inference that appellant was the person who took the items out of the store without paying was further reinforced:

(i) by the discovery of items matching the description of items removed from the cart, and a knife, in appellant's bunk;
(ii) appellant's own call to Smart & Final, identifying himself as Errol Bagner, and explaining that he had taken the items, but that it was all a ""mistake;""
(iii) evidence that a week earlier, Garcia confronted appellant for leaving the store without paying for the same items.

All of the foregoing constitutes substantial evidence that he was the person Martin saw removing the items from the store.

Appellant also contends that there was no substantial evidence that Garcia had actual or constructive possession of the items in the cart when he confronted appellant in the lot in an attempt to prevent appellant from escaping with the property taken from Smart & Final.  It is well established that an employee, such as a store manager, has constructive possession of store merchandise, even if he or she does not have immediate control over the property taken. (See, e.g., People v. Miller (1977) 18 Cal.3d 873, 880-881, 135 Cal.Rptr. 654, 558 P.2d 552; People v. Galoia (1994) 31 Cal.App.4th 595, 597, 37 Cal.Rptr.2d 117; People v. Estes, supra, 147 Cal.App.3d at p. 26, 194 Cal.Rptr. 909.)  It is also well established that, because the offense of robbery includes an element of asportation and is not complete until the robber reaches a place of temporary safety, robbery is committed even when the defendant initially takes possession without force of fear, but thereafter uses force to prevent the victim from regaining possession of the goods.  ( People v. Pham (1993) 15 Cal.App.4th 61, 64-65, 18 Cal.Rptr.2d 636; People v. Estes, supra, 147 Cal.App.3d at pp. 27-28, 194 Cal.Rptr. 909 [security guard had constructive possession of store merchandise, and defendant committed robbery when he brandished a knife in parking lot outside store, to resist security guard's attempt to regain possession].)  Appellant acknowledges these basic principles, but asserts that an employee's constructive possession extends only to property owned by the employer. He   then repeats his initial contention that there was no substantial evidence that the property had been taken from the store without paying

9

for it. He reasons that, in the absence of substantial evidence that the items were taken without paying for them, there was also no substantial evidence that Garcia had constructive possession of the goods in the cart, because merchandise that has been sold is no longer the store's property. As we shall explain, infra, in the context of appellant's claim of instructional error, this argument confuses the element of intent and appellant's defense of ""claim of right"" to the property, with the element that the victim have possession. In this context, however, it is sufficient to point out that, for the reasons we have already stated, appellant's premise that there was no substantial evidence that he took the items from the store without paying for them is incorrect. There was also substantial evidence that Garcia was a store manager. As such he had the right to exercise control over store merchandise, and therefore has constructive possession of it, including the items in the cart, at the time of the

10

confrontation parking lot. (People v. Galoia, supra, 31 Cal.App.4th at p. 597, 37 Cal.Rptr.2d 117; People v. Estes, supra, 147 Cal.App.3d at p. 26, 194 Cal.Rptr. 909.)

(Exh. 5 at 8-12.)

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). When all is said and done, the cashier, though she was unable to identify petitioner, did see someone leaving the store with a cart containing items she reasonably believed had not been paid for; the manager did identify and confront petitioner; there is no evidence that someone else left the store with unpaid merchandise at the same time; and the candy and knife were found on petitioner's bed in the shelter. Here, there is another layer of deference on top of the already-deferential *Jackson* standard; to succeed, petitioner must show that the state courts' determination that the evidence was sufficient for a rationale jury to find him guilty beyond a reasonable doubt was itself unreasonable. *See Jackson*, 443 U.S. at 324; *Juan H. v. Allen*, 408 F.3d 1262, 1278-79 (9th Cir. 2005) (AEDPA adds another layer of deference). The undisputed facts as are such that petitioner cannot meet this standard.

The state courts' decisions were not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### 3. INSTRUCTIONAL ERROR

Petitioner asked the court to give this instruction: "Constructive possession depends upon a special relationship with the owner of the property. The special relationship necessary to create a possessory interest in the property may be established only by proving the victim has a legally recognizable interest in the property. A person must have an ownership interest in the property taken for the taking of the property to constitute a robbery" (Exh. 5 at 12). The court of appeal held that this was not a correct statement of California law, so failure to give it was not error, (*ibid.*), a holding that is binding here. *See Bradshaw v. Richey*, 546 U.S. 74, 76

11

1  (2005) (state court's interpretation of state law, including one announced on direct appeal of the
2  challenged conviction, binds a federal court sitting in habeas corpus).

3      The omission of an instruction is less likely to be prejudicial than a misstatement of the
4  law. *Walker v. Endell*, 850 F.2d at 475-76. Thus, a habeas petitioner whose claim involves a
5  failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v.*
6  *Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155
7  (1977)). In light of this, certainly there can be no due process violation in failure to give an
8  instruction that is not even correct. Petitioner's due process rights were not violated by the trial
9  court's failure to give the instruction, so the state courts' rejection of this claim was not contrary
10 to, or an unreasonable application of, clearly-established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September  29 , 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.05\BAGNER631.RUL.wpd